The opinion of the court was delivered by
Blanchard, J.
Plaintiff, a young Spanish girl, seeks to hold defendant responsible in damages for injuries inflicted upon her by being struck by one of the street cars of the company.
*2150 ' Allegations of fault, negligence and recklessness of the company and its agents, usual in- damage suits, are made.
Her injuries are described, the pain and suffering she underwent delineated, the medical and surgical treatment she received outlined, and the length of time she was laid up given.
It is also averred that her injuries are serious and permanent, her general health impaired, her nervous system disordered, arid her ability to earn a livelihood lessened. She lays her damages at $5,000.00, with $50.00 additional for medicines, etc.'
The defense ascribes the accident and injury which befell plaintiff to her own fault and gross contributory negligence.
The case was tried by jury, and a verdict of $500.00 returned in favor of plaintiff, two jurors of the panel dissenting.
Defendant appeals.
It is urged here that the verdict on its face bears evidence that it was not a deliberate conclusion reached on the evidence administered, but a sentimental verdict wrung from a sympathetic jury, and an intimation in argument ascribes this to the hypnotic influence exerted upon susceptible jurors by the presence before them of the comely young plaintiff.
This view, or part of it, seems to find corroboration in the observations of the trial judge denying the application for a new trial. He said: “I am more than doubtful whether a new trial should not be allowed. The amount of the verdict is very small. I am much of the opinion it was extorted from the sympathy of a jury making free with other people’s money.'' I may 'be' mistaken in this view, and it seems imprudent for a single individual, acting in a case of this kind, to disturb the finding of a jury of twelve men. It is, perhaps, wiser to let the matter rest in the better judgment of a larger as well as. a wiser body of judges.”
The evidence in the case, considered and weighed and balanced here, out of the presence of the plaintiff, fails utterly to impress the judicial mind with the same adequacy and force to make out a case for her with which it seems to have inspired.the jury when adduced before them in her presence.
The truth is, the plaintiff has no case. The accident and injury diich befell her cannot be attributed to negligence and recklessness on the part of either the motorneer or conductor of the car which struck her. We must acquit them of blame in this instance.
*2151 To her own want of ordinary care and prudence is due the misfortune which overtook her.
She was, at the time, a domestic in the service of a family living near -the scene of the accident. She was sent at dark on Christmas eve to a grocery, several blocks away, to make some purchases. She did the •errand and was returning home. Going, she had- crossed St. Charles -avenue, in the City of New Orleans, and returning, it was necessary to recross the same street.
Two lines of street railway traverse this street, both belonging to ■defendant corporation. ■ The line nearer the river is used for the downtown cars; the other for the up-town cars.
Returning towards her home, plaintiff’s course was in the direction of -the river. She, therefore, in crossing St. Charles avenue, approached -first the up-town track of defendant’s railway
As she neared the center of the street two cars were seen approaching •on this track. She paused to let them pass. They were about half •a block apart.
The rear one of these cars stopped where she was standing, or slackened its speed sufficiently, to permit a passenger to alight. He got off in close proximity to her. The ear then passed on up-town. One hundred and fifty feet away from where she stood this car passed another coming down on the other track. This down-town car was brilliantly lighted within, and its head-light was in full blaze.
It was impossible for plaintiff not to have seen it coming had she looked. It was impossible for her not to have heard its gong, which was sounding, had she listened.
It was her duty both to look and listen and to govern herself with prudence according as the situation demanded.
The gentleman, who had alighted from the up-town car, testifies he ■saw and heard the car, and yet he was behind her as they both approached the down-town track, intendingl to cross to the river side of St. Charles avenue.
This down-town car was traveling at a very moderate rate of speed— ■not over four miles an hour, much less than the rate of speed at which it was permitted to travel by the city ordinances.
Plaintiff had a basket on one arm and a jug in the other hand. Over her head was what is described as a “fascinator”' — a shawl or head-covering of crochet work. This must have obscured her vision of the •approaching car.
*2152 Her counsels theory is that it was the up-going car from which the gentleman had alighted, and the one ahead of it, which prevented her from seeing the.car coming down. But that could not have been -for the front, car had passed on up a block or more away, and the second one, the proof shows, was passed by the car coming down half way of the block, or one hundred and fifty feet away from where the accident occurred. •
Besides, if these up-town cars had obscured her vision of the track of the down-town car sufficiently to have prevented her from seeing the axiproach of the latter, the same would have been true of the gentleman who alighted from the up-town car at the point at which she was standing. Yet he both saw and-heard the car in time to avoid it, though he was following the plaintiff in, their course across .the.-street.
Asked on cross-examination: - “ Do .you know whether or not you were on the track when yqu were struck by the car,? ” -the plaintiff answered: “ As soon as I went to cross I was struck.- I had my foot over the iron rail.”
“ How quickly after stepping out .were you struck ? ” Answer: “ Very quickly:”
“Was it not instantly, as quick,,as<fhat — ;(as the snapping of a finger) ?” Answer: “It was as quick as that.”
This shows that the plaintiff stepped on the track just as the car reached the point where she intended .crossing.
- The. motorneer seeing hqr recklessness halloaed at her and took prompt action to check his car.
The gentleman crossing with her also gave a .warning cry, and this failing, he attempted to seize her to prevent the impending impact. But too late.
She was knocked down, dragged a little way before the car could be stopped, but not run over.
Her collar-bone and three ribs were broken and she -was otherwise bruised.
She was in the hospital for six weeks and suffered much.
. But she eventually recovered and was at the time of trial apparently well.
If she had any case at all, the verdict of*the jury was in its amount inadequate.
The evidence leaves no doubt upon the mind that the car which struck her was running at a moderate and safe rate of speed; was .under the: *2153 control of the motorneer; was stopped in a brief space of time and distance ; and from the manner in which -she was struck it is evident she? ran into the car without paying any heed whatsoever to its approach.
She cannot recover. Dieck vs. City Railroad, 51 La. Ann. 262; O’Rourke vs. Ry. Co., 51 La. Ann. 757; Farrar vs. Ry. Co., 52 La. Ann. 417.
It is, therefore, ordered and decreed that the verdict and judgment appealed from.be avoided and reversed and that plaintiff’s demand be¡ rejected with costs in both courts.
Watkins, J., takes no p&rt — absent on account of illness.