As there were not sufficient funds on hand to pay the checks drawn in this case by plaintiff on its account in defendant bank, these checks were properly returned.

Judgment affirmed.

ST. PAUL, J., absent.

## FAVAZA v. NEW ORLEANS PUBLIC SERVICE, Inc*

### No. 14830.

Court of Appeal of Louisiana. Orleans.
April 23, 1934.

Rehearing Denied May 7, 1934.

Ivy G. Kittredge, of New Orleans, for appellant.

Finnorn & Todd, Robt. B. Todd, and Cameron McCann, all of New Orleans, for appellee.

HIGGINS, Judge.

Joseph Favaza and Murphy Frere, his chauffeur, brought separate suits against the defendant street railway company to recover damages for personal injuries resulting from a collision between Favaza's Ford sedan automobile and the defendant's street car at the corner of Loyola street and Cleveland avenue, this city, on October 28, 1932, at about 9 o'clock p. m.

The petitions charge that the motorman

*Writ of certiorari denied May 21, 1934.

was at fault in operating the street car at an unlawful and excessive rate of speed, particularly when his view of traffic approaching on the intersecting street was obstructed, in neglecting to sound his gong as a warning of the street car's approach, and in failing to see the automobile after it entered the intersection.

The defendant filed an answer in each case, denying that the street car was being driven at a rate of speed in excess of that permitted by the city traffic ordinance, No. 13702, C. C. S., and averring that it was being operated at a moderate rate of speed, the motorman keeping a proper lookout and sounding his gong when nearing the crossing; that the sole and proximate cause of the accident was the chauffeur's negligence in driving on the car tracks at a fast and unlawful rate of speed. In the alternative defendant pleaded that, in the event the motorman should be held to be at fault, plaintiffs were guilty of contributory negligence in failing to stop the automobile at a point where they could reasonably observe the approach of the street car, in not carefully and prudently looking in the direction from which the street car was coming, and in failing to hear the approaching street car, which was making considerable noise.

Joseph Favaza's case was tried before a jury in division D of the civil district court, but, as one of the jurors had lost a member of his family during the course of the trial, he was excused by consent, and the trial with eleven jurors resulted in a mistrial. The case was again tried before another jury in division C of the same court, which rendered a verdict in favor of the plaintiff for the sum of $9,779. Murphy Frere's case was then submitted on the record to the judge of division E of that court, it being agreed between the parties that, in the event the trial judge should come to the conclusion that there was liability, the award should be fixed at $400, and the court, having found liability, granted Frere a judgment for that amount. Defendant did not ask for new trials and directly appealed to this court.

Plaintiff, Favaza, has answered the appeal and asked that the award be increased to the full amount prayed for, or $36,129. The cases were consolidated here in order that they might be considered together by this court.

Cleveland avenue is a paved roadway, 29 feet in width from curb to curb, and runs from the direction of the river towards the lake and is a one-way street under the traffic ordinance in that direction. Loyola street is likewise paved and a one-way street from Canal street towards uptown, measuring, from curb to curb, 29 feet 5½ inches in width, with street car tracks located in the center. The two streets cross each other at right angles. The downtown sidewalk on Cleveland avenue measures 12 feet 5½ inches in width; the riverside sidewalk of Loyola street is 12 feet wide. There is an automobile parking ground located on the downtown riverside of the intersection and one located opposite there on the uptown riverside of the intersection. There is neither a traffic light nor a traffic sign at this corner.

Favaza's Ford sedan automobile was occupied by Mr. Leon Gaye, one of his employees, who was seated on the rear seat, Murphy Frere, his colored chauffeur, 18 years of age, who was driving, and Favaza, who was seated next to the chauffeur. The automobile came down South Rampart street, turned in at Tulane avenue, and then into Elks place, crossed the neutral ground at Elks place, and proceeded into Cleveland avenue in the direction of the lake; Elks place being one block from Loyola street and parallel thereto. As the Ford automobile neared the crossing, its driver slowed down and then stopped at a point about 5 feet from the riverside gutter curb of Loyola street. It then slowly rolled onto the street car tracks, and, after the front wheels had passed over the first rail and were nearing the second rail, it was struck on its right side by the left front part of the street car at a point where the right front fender joins the running board and also where the door of the automobile is located. The automobile remained in front of the street car in a slanting position and was pushed up Loyola street a distance of about 75 feet. The street car weighed 35,000 pounds and the automobile 2,400 pounds. The street car, a new large steel type, slowly turned into Loyola street from Canal street over the sharp curve at that point and then proceeded up Loyola street toward Cleveland avenue, which is one block from Canal street and parallel thereto. Both vehicles were properly lighted and equipped with good brakes. The atmosphere was clear and the street dry.

Conceding that the motorman was guilty of negligence in failing to maintain an adequate lookout and to place his car under proper control under the circumstances surrounding the accident, a view most favorable to the plaintiffs, we shall pass to a consideration of the question of contributory negligence.

It is conceded by the plaintiff, Favaza, that Frere, his chauffeur, was acting as his duly

authorized agent within the scope of his authority, and that, if he was guilty of negligence, it is imputable to him. The plaintiff, Favaza, and the passenger, Leon Gaye, were both knocked unconscious and testified they could not remember any details of the accident. Plaintiff's witnesses Joseph McLaughlin, C. E. Birmann, and George Damon state that their attention was directed to the accident by the noise of the impact, so that their testimony on the issue of contributory negligence is not helpful, except as to the speed of the street car.

The several eyewitnesses of the plaintiff testified that the street car was going at approximately 25 or 30 miles an hour at the time of the accident. In fact, two of these witnesses, who were standing in the middle of the block on Loyola street, between Canal street and Cleveland avenue, estimated that the street car passed them at that rate of speed. Plaintiff's witnesses also testified that the automobile was pushed by the street car from the point of impact to where it finally stopped, a distance of about 90 feet, as a further indication of the speed at which the street car was traveling.

In order to counteract and offset this evidence, defendant introduced the testimony of several persons who were experienced in the operation of street cars. They testified that by actual test the street car in question could not from a standing start gain a rate of speed in excess of 15 miles an hour within one block, or 300 feet, and, to arrest the momentum and bring the car to a stop when it was going that fast, it would require 80 feet. They further state that, if the street car went around the curve at Canal street at the rate of six miles an hour, the maximum rate of speed it could gain in one block would be 20 miles an hour, and that the car could then only be stopped in a distance of not less than 90 feet.

We are satisfied that the estimation of the plaintiff's witnesses as to the number of miles per hour that the street car was traveling as it went up Loyola street and at the time it struck the automobile is too high, and that the motorman's approximation of 18 miles an hour is correct.

Murphy J. Frere, the chauffeur, testified that he stopped with the front part of the Ford automobile about 5 feet from the river gutter curb of Loyola street, looked and listened for traffic moving up Loyola street, because he knew it was a one-way street, and neither saw nor heard the approach of any vehicle, although he had a range of vision down Loyola street toward Canal street for a distance of approximately 45 feet; that he then moved forward and looked and listened again, with a range of view of about 55 feet, and neither heard nor saw anything coming; that he then looked forward out Cleveland avenue in the direction of the lake and rolled upon the street car tracks at about 3 or 4 miles per hour; that Favaza then hollered "look out," and he simultaneously discovered the presence of the street car bearing down upon him, accelerated his speed in order to get across, but failed to do so, as he was struck on the right side by the car and pushed about 90 feet up Loyola street, where both vehicles came to a stop, still entangled.

Stanley Willoz, who was walking on the uptown river sidewalk of Cleveland avenue, about the middle of the block, between Elks place and Loyola street, noticed the Ford automobile as it slowly approached the intersection; that he heard the noise of the approaching street car, looked over the top of the automobiles in the parking lot, and saw the street car coming from behind the rear of the Elks building, which, by actual measurement is 69 feet from the intersection; that he heard the motorman sound the gong as he approached the crossing; and that, as the automobile got on the street car tracks, there was a terrible crash as the result of the two vehicles colliding, and that the street car pushed the automobile up Loyola street for a considerable distance.

Edgar M. Stern, a taxicab driver and a former member of the city police force, as a witness for the plaintiff, stated that he was standing on the uptown lake sidewalk of the intersection, about to return to his place of employment, which was situated on the riverside of Loyola street less than a half block above the intersection; that he stopped there in order to permit a street car to pass; that he noticed the automobile slowly approach the intersection, come to a complete stop, and then slowly go forward toward the street car tracks; that at that time he heard the noise of the street car coming up Loyola street from the direction of Canal street, looked down and saw it at a distance which he approximated between 15 and 18 feet, or "maybe a few inches more"; that he "heard the gong ringing, going at a rapid rate"; that the street car was then running about 25 or 30 miles an hour and his attention was attracted to it by the noise that it was making; that, as the automobile entered the tracks the street car struck it and pushed it up Loyola street about 90 feet.

The evidence introduced by the defendant, tending to show contributory negligence on the part of the driver of the automobile, consisted of the testimony of the motorman and a passenger on the car, a young lady employed in one of the departments of the defendant company's office, who both·say that the automobile did not stop at the intersection, but approached it at a rate of speed of about 35 miles an hour.

The trial judge, in his reasons for judgment, states that he was of the opinion that the preponderance of the evidence was in favor of the plaintiff on the issue of whether the automobile stopped or ran across at a fast rate of speed, due to the direct testimony of the disinterested witnesses, as well as the physical fact that the automobile remained in front of the street car from the time it was struck until both vehicles came to rest about 75 feet away. This conclusion appears to us to be sound, but our learned brother below failed to say whether or not the testimony given by the chauffeur and the plaintiff's witnesses, as a matter of law, shows that the driver of the automobile was guilty of contributory negligence. The defendant, in the answers filed in both cases, specially pleaded contributory negligence on the additional ground that the plaintiffs failed to properly stop, look, and listen before entering the intersection, and consequently defendant was entitled to have the question decided.

■ When the driver of a vehicle approaches an intersection or place which he knows is hazardous, the law requires him to exercise that degree of care and prudence which an ordinarily careful driver would exercise under like circumstances. If the parked automobiles were practically up to the gutter curb, as Frere would have us believe according to his testimony in the second trial, then he stopped his car at a point where he could not properly see down Loyola street in the direction from which traffic could lawfully approach. If the automobiles were not parked to the gutter curb, but only 2 or 3 feet on the sidewalk, as the testimony in the first trial would indicate, then at the point where he stopped he had a clear view down Loyola street as far as Canal street. We are convinced that the street car was within close proximity of the crossing at the time that plaintiff's automobile approached the tracks, and we believe that an ordinarily prudent and careful driver would have discovered the presence of the street car, both by looking at it as well as by. hearing it, as it came toward him. Plaintiff's witness, Willoz, who was in the middle of the block,

heard the street car and noticed it even by looking over the tops of the automobiles, although he had less reason to do so than Frere. Plaintiff's witness, Stern, also heard and saw the street car as it came toward the corner. He estimates that at the time the automobile was about to enter the tracks the street car was down Loyola street about 15 or 18 feet and that the gong was being sounded.· Surely, Frere at that time should have discovered that the street car was coming, and, as he was only going about 3 miles an hour, he could and should have brought his automobile to a stop and thereby avoided the accident. It is also significant that the plaintiff Favaza, when the automobile entered the tracks, discovered that the street car was bearing down upon them and warned his chauffeur. Unfortunately it was then too late. It appears, too, that the neighborhood was a quiet one, and we feel that, as a street car is larger and makes more noise than an automobile when in motion, the driver of the automobile had a better opportunity to see and hear the street car than the motorman had to discover the presence of the Ford automobile.

■ The following language from the case of Gibbons v. N. O. Terminal Co., 1 La. App. 371, is very appropriate:

"The presumption of law, juris et de jure, is that a plaintiff saw a thing that he should have seen had he looked, and that he failed to look at the proper time and in the proper manner if he did not see the things he should have seen by looking.

"It is not sufficient for a plaintiff to have looked and listened, he must have done so at the opportune time, and in an efficient manner.

"The failure of a railroad to close a gate or to have a flagman on the approach of a train will not relieve one intending to cross a track from the charge of negligence when, by ordinary precautions, he could ·have seen or heard the train." Syllabus.

In affirming this holding of the Court of Appeal, the Supreme Court said: "He did not look, and he did not listen, at a time when the proper exercise of the two senses would have been effective, and would have avoided the injury to himself and to his automobile." Gibbens v. N. O. Terminal Co., 159 La. 347, 105 So. 367, 368.

■ We believe that Frere was guilty of negligence which contributed to the accident, in that he failed to stop at a point where he could have properly observed approaching traffic· for a· reasonable distance,

and in failing to see or hear the street car, although it was within reasonable proximity to him at the time. Dubose v. N. O. Ry. & Light Co., 123 La. 1029, 49 So. 696; Harrison v. Louisiana West. R. R. Co., 132 La. 761, 61 So. 782; Bofill v. N. O. Ry. & Light Co., 135 La. 996, 66 So. 339, L. R. A. 1915C, 419; Callery v. M. L. & T. R. & S. S. Co., 139 La. 770, 72 So. 222; Boylan v. N. O. Ry. & Light Co., 139 La. 186, 71 So. 360, Ann. Cas. 1918A, 287; Broussard v. La. West. R. R. Co., 140 La. 517, 73 So. 606; Woods v. Lumber Co., 141 La. 267, 74 So. 990; Tyler v. Gulf, C. & S. F. R. R. Co., 143 La. 177, 78 So. 438; Nolan v. I. C. R. R. Co., 145 La. 483, 82 So. 590; Morrow v. R. R. Co., 147 La. 493, 85 So. 217; Mohren v. N. O. Ry. & Light Co., 147 La. 345, 84 So. 897; Daull v. N. O. Ry. & Light Co., 147 La. 1012, 86 So. 477; Gibbons v. N. O. Terminal Co., supra; Young v. La. West. R. Co., 153 La. 129, 95 So. 511; Nelson v. R. R. Co., 140 La. 676, 73 So. 769; Friedman v. N. O. Ry. & Light Co., 153 La. 951, 96 So. 821; Gannon v. N. O. Ry. & Light Co., 154 La. 435, 97 So. 601; Bertucci v. N. O. Ry. & Light Co., 155 La. 451, 99 So. 400; Thompson v. Morgan, 167 La. 335, 119 So. 69; Heideman v. N. O. Pub. Service, Inc., 1 La. App. 275; Burton v. I. C. R. R. Co., 3 La. App. 362; Tourmillion v. N. O. Pub. Service, Inc., 3 La. App. 297; Andrepont v. T. & P. R. R. Co., 5 La. App. 625; Bihm v. N. O. & Mex. R. R. Co., 6 La. App. 655; Casey v. Shreveport Rys. Co., 7 La. App. 127; Taranto v. Orleans Kenner Traction Co., 8 La. App. 715; Benedict v. N. O. Public Service, Inc., 9 La. App. 322, 120 So. 521; Lehon v. N. O. Public Service, Inc., 10 La. App. 715, 123 So. 172; Melum v. N. O. Public Service, Inc., 11 La. App. 338, 123 So. 373; Gaisser v. N. O. Pub. Service, Inc., 12 La. App. 110, 124 So. 692; Wyatt v. Y. & M. V. R. R. Co., 13 La. App. 632, 127 So. 479; Grappe v. T. & P. R. R. Co., 16 La. App. 244, 133 So. 802; Lee Wing v. N. O. Public Service, Inc., 16 La. App. 3, 132 So. 526; Keller v. N. O. Public Service, Inc., 18 La. App. 317, 138 So. 463; Schmidt & Ziegler v. N. O. Pub. Service, Inc., 18 La. App. 722, 137 So. 871; Carlino v. N. O. Public Service, Inc.; 7 La. App. 615; Stortz v. N. O. Public Service, Inc., et al. (La. App.) 141 So. 814; Caruso v. N. O. Public Service, Inc. (La. App.) 142 So. 860; Carnahan v. N. O. Public Service, Inc. (La. App.) 145 So. 311; Noel v. New Iberia & N. R. R. Co. (La. App.) 145 So. 377; Holderith v. Zilbermann (La. App.) 151 So. 670, 671; Snider v. N. O. & C. R. R. Co., 48 La. Ann. 1, 18 So. 695; Hoelzel v. Crescent City Rys. Co., 49 La. Ann. 1302, 22 So. 330, 38 L. R. A. 708; Dieck v. N. O. Ry. & Light Co., 51 La. Ann. 262, 25 So. 71; Ponsano v. St. Chas. St. R. Co., 52 La. Ann. 245, 26 So. 820; Canedo v. N. O. &. C. Rys. Co., 52 La. Ann. 2149, 28 So. 287; Cowden v. Shreveport Belt Ry. Co., 106 La. 236, 30 So. 747; Heebe v. N. O. & C. Rys. Co., 110 La. 970, 35 So. 251; Dewez v. New Orleans R. Co., 115 La. 432, 39 So. 433; McShane v. N. O. Ry. & Light Co., 137 La. 830, 69 So. 268; Capp v. Southwestern Traction & Power Co., 142 La. 529, 77 So. 141; Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403; Baltimore & Ohio R. R. Co. v. Goodman, Adm., 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.

We have been referred to the cases of McDonald et al. v. Stellwagon et al. (La. App.) 140 So. 133, and Hamilton v. Lee (La. App.) 144 So. 249. We do not believe those cases apposite here because in each of them the court found that the plaintiff had, as a prudent and careful driver, stopped, looked, and listened, and, observing that there was not any traffic within a reasonable distance, ventured into the intersection and was struck as a result of the unlawful and excessive rate of speed at which defendant's car was being driven; in short, that the proximate cause of the accident in both cases was the excessive and unlawful speed of the defendant's car—in one case the defendant was driving at 35 miles per hour, and in the other the defendant was going 45 miles per hour.

Finally, counsel for plaintiffs contends that, even if the driver of the automobile was guilty of negligence, plaintiffs nevertheless are entitled to recover under the doctrine of the last clear chance. By mathematical calculations based upon the estimates of speed of the automobile and street car, respectively, by the witnesses, he seeks to show that, from the time the automobile stopped until the moment it was struck, a period of three seconds elapsed, and that, as the street car was moving at a speed of 18 miles an hour, it went 26 feet per second, or in three seconds a distance of 78 feet, and that therefore the motorman had an opportunity to avoid the accident and neglected to do so. The fallacy in this argument is that it does not take into account the fact that, after discovering the presence of the automobile near the tracks, the motorman immediately shut off his power and applied his brakes in order to avoid the collision. This line of reasoning is unsound also because it fails to take into consideration that the driver of

the Ford automobile accelerated the automobile in an effort to get across after noticing the street car. It further ignores the fact that plaintiff's own witness Stern states that the street car was about 15 or 18 feet from the corner at the time the Ford automobile reached the car tracks.

There is abundant evidence in the record to show that a street car being driven at a rate of 18 miles an hour cannot be stopped in less than 90 feet. However, as soon as the motorman saw the automobile near the tracks, he applied his brakes and sounded his gong, and therefore we are of the opinion that he did everything possible to avoid the accident and that the doctrine of the last clear chance is inapplicable. Nolan v. I. C. R. R. Co., supra; Cowden v. Shreveport Rys. Co., supra; Wolf v. N. O. Ry. & Light Co., 133 La. 891, 63 So. 392; Callery v. N. O. Ry. & Light Co., supra; White v. I. C. R. R. Co., 114 La. 826, 38 So. 574; Harrison v. R. R. Co., 132 La. 761, 61 So. 782; Castile v. O'Keefe, 138 La. 479, 70 So. 481; McShane v. Rys. Co., supra; Friedman v. N. O. Ry. Co.; supra; Bertucci v. N. O. Rys. Co., supra; Thompson v. Morgan, supra.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant, New Orleans Public Service, Inc., and against the plaintiff, Joseph Favaza, dismissing the suit at his cost.

Reversed.